**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER M. MASON, | ) | CASE NO. 5:25-CV-00636-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN ANGELA STUFF, DAVID YOST, | ) | CARMEN E. HENDERSON |
| THE ATTORNEY GENERAL OF THE | ) | |
| STATE OF OHIO; | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants, | ) | |

## I.  Introduction

Christopher M. Mason ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for murder, attempted murder, felonious assault, child endangering, and possession of weapons while under a disability, with additional gun specifications, for which he is serving a sentence of 31 years to life imprisonment.  (ECF No. 1).  This matter was referred to the undersigned under Local Rule 72.2 to prepare a report and recommendation on the petition.  For the reasons set forth below, I recommend that the Court deny Mason's petition in its entirety and not grant him a certificate of appealability.

## II.  Factual Background

The Ohio Court of Appeals for the Ninth Appellate District set forth the following facts[1]

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

on direct appeal:

> {¶2} Mr. Mason shot his girlfriend inside her apartment. Her five-year-old child witnessed the shooting. Before leaving the apartment, Mr. Mason shot the child in the face and removed the apartment's Ring camera. He spoke with an old acquaintance about an hour later. He told the acquaintance he had shot someone who attacked him. He also admitted that he had shot her child.
>
> {¶3} Neighbors heard the shots fired at the girlfriend's apartment and called 911. The police responded to the scene and found the child injured but alive. The child told an officer that "Chris killed her mama" and that "Chris" was her mother's boyfriend. The police arrested Mr. Mason after they confirmed that he was the mother's boyfriend and that he had been at the apartment that evening.

(ECF No. 6-1 at PageID #: 162-63).

### III. Relevant State Procedural History

#### A. Trial Court Proceedings

On February 14, 2023, a grand jury in the Summit County Court of Common Pleas indicted Petitioner on multiple counts. (ECF No. 6-1 at PageID #: 55-59). The indictment included two counts of murder; two counts of attempted murder; two counts of felonious assault; a single count of having weapons while under disability; and a single count of endangering children. (*Id.*). Firearm specifications were included as to all counts, with the exception of the weapons charge. (*Id.*). Petitioner entered not guilty pleas as to all charges on March 1, 2023. (*Id.* at PageID #: 61).

The trial court held a status conference on June 2, 2023, which defense counsel attended in person and Petitioner attended via video conference. (*Id.* at PageID #: 67). During the conference, "[t]he Court reviewed Defendant's right to a jury trial with Defendant, who indicated he wanted to waive his right to a jury trial, and proceed to trial to the bench." (*Id.*). The Court ordered Petitioner to execute a written jury waiver prior to trial. (*Id.*). Petitioner's written waiver was filed on June 12, 2023. (*Id.* at PageID #: 65).

Before trial commenced, Petitioner provided notice of his intent to argue he acted in self-defense. (*Id.* at PageID #: 69-70). The two-day trial commenced on July 17, 2023, and the trial court judge found Petitioner guilty as to all counts. (*Id.* at PageID #: 84). The court sentenced Petitioner to a total minimum prison term of 31 years to life with a maximum prison term of 37 years to life. (*Id.* at PageID #: 90).

**B. Direct Appeal**

On appeal, Mason raised two assignments of error:

> (1) The trial court lacked jurisdiction to try Mr. Mason because the jury-waiver procedure did not strictly comply with R.C. 2945.05.
>
> (2) The trial court's guilty verdicts on Counts 1 and 2 were against the manifest weight of the evidence.

(ECF No. 6-1 at PageID #: 96-113). The State of Ohio filed an Appellee's brief (*Id.* at PageID #: 122-43), and Mason filed a reply brief (*Id.* at PageID #: 153-60). On July 24, 2024, the state appellate court overruled Mason's assignments of error and affirmed his convictions and sentences. (*Id.* at PageID #: 162-72).

**C. Appeal to the Ohio Supreme Court**

On October 3, 2024, Petitioner moved for a delayed appeal in the Ohio Supreme Court. (ECF No. 6-1 at PageID #: 178-82). The court granted the motion and ordered Petitioner to file his memorandum in support of jurisdiction. (*Id.* at PageID #: 196). In his memorandum, Petitioner asserted two propositions of law:

> (1) The trial court lacked jurisdiction to try Mr. Mason because the jury waiver procedure did not strictly comply with R.C. 2945.05.
>
> (2) The trial court guilty verdict on Counts 1 and 2 were against the manifest weight of the evidence.

(*Id.* at PageID #: 198-210). The state waived its response. (*Id.* at PageID #: 225). On February 18, 2025, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.* at PageID #: 227).

### D. Post Conviction Proceedings

On August 4, 2023, before the notice of appeal was filed, Mason filed a pro se petition for post-conviction relief in the trial court. (ECF No. 6-1 at PageID #: 229). Mason moved to vacate his convictions based on an alleged speedy trial violation and denial of his rights to due process and a fair trial. (*Id.*). On October 23, 2025, Petitioner filed an amended petition for post-conviction relief, asserting a claim of ineffective assistance of trial counsel. (*Id.* at PageID #: 239). The trial court's docket shows no action on the motions as of May 5, 2025. (*See id.* at PageID #: 241-46).

## IV. Federal Habeas Corpus Petition

On or about April 1, 2025, Mason, pro se, filed the instant federal petition,[2] asserting the following two (restated) grounds for relief:

(1) The trial court lacked jurisdiction to try Mr. Mason because the jury waiver did not strictly comply with R.C. 2945.05.

(2) The guilty verdicts on Counts 1 and 2 were against the manifest weight of the evidence.

(ECF No. 1 at PageID #: 3-9). Respondent, the State of Ohio, filed a return of writ on August 18, 2025. (ECF No. 6). Mason filed a traverse on September 9, 2025. (ECF No. 7).

## V. Legal Standards

Because Petitioner is a state prisoner seeking federal habeas relief, his petition is governed

---

[2] While the Petition itself is not signed, Petitioner contemporaneously filed a civil cover sheet bearing Petitioner's signature and Respondent has not raised the lack of signature as a basis for dismissal. The undersigned declines to recommend dismissal on this basis given that Petitioner's claims are otherwise not cognizable and/or meritless and subject to dismissal on those grounds. *See Lawless v. Hill*, No. 5:21-cv-01938, 2024 WL 5247825, at *1 n.1 (N.D. Ohio Dec. 30, 2024), *report & recommendation adopted*, 2025 WL 2486699 (N.D. Ohio Aug. 29, 2025).

by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), and corresponding case law.

### A. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in the application of state law … are usually not cognizable in federal habeas courts." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### B. Exhaustion

Under 28 U.S.C. § 2254(b), a state prisoner seeking federal habeas relief must exhaust "the remedies available in the courts of the State" or show that (1) there is an absence of available State corrective process or (2) circumstances exist that render such process ineffective to protect the prisoner's rights. "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, "state prisoners must

5

give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(c).

### C. AEDPA Standard of Review

Turning to claims addressed on the merits in state court proceedings, 28 U.S.C. § 2254(d) provides that federal habeas relief shall not be granted unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v.*

*Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding

7

in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

**VI. Discussion**

    **A. Ground One – Jury Waiver**

In his first ground for relief, Petitioner argues the trial court lacked jurisdiction to proceed with his trial because his jury waiver did not strictly comply with Ohio Revised Code 2945.05 because the written waiver was not signed and executed in open court. (ECF No. 1 at PageID #: 3). Petitioner asserts that the lack of strict compliance violated his constitutional right to due process and a fair trial. (*Id.* at PageID #: 4).

Respondent argues Petitioner's ground one fails for multiple reasons. First, Respondent argues this claim is not cognizable on federal habeas review because it presents a state law issue—

specifically, compliance with Revised Code 2945.05—and merely using "the talismanic phrase 'due process' to bootstrap a state law claim into a federal Constitutional one" is insufficient. (ECF No. 6 at 10-11). Next, to the extent ground one asserts a federal claim, Respondent argues it is unexhausted because Mason has never presented a due process claim to the state courts. (*Id.* at 11-13). Further, because "the Ohio courts have spoken on the relevant legal proposition under state law," Respondent argues "[t]he only option is either to dismiss the entire petition or to allow Mason to withdraw habeas claim one." (*Id.* at 13). Finally, Respondent argues ground one fails on the merits because the state court adjudicated the claim and Mason does not dispute the factual conclusions, but merely "contests the application of these admitted facts to state law," such that "it is logically impossible to find the Ohio Court of Appeals' adjudication in violation of the AEDPA where the state court applied state law to admitted facts." (*Id.* at 19-20).

In his traverse, Petitioner does not address Respondent's arguments concerning whether ground one is cognizable or exhausted, instead only addressing the merits. (*See* ECF No. 7 at PageID #: 755-57). Specifically, Petitioner asserts that "[a] defense attorney taking a jury waiver form to a jail and then filing it a full 10 days [later] with a clerk after the jury-waiver hearing occurs may in fact be a waiver made in writing but it is not a waiver made in writing and in court as was required by the State Supreme Court in *State v. Lomax*, 114 Ohio St. 3d 350, 2007-Ohio-4277." (*Id.* at PageID #: 756).

The undersigned agrees with Respondent that Petitioner's jury waiver claim is not cognizable on federal habeas review. As Respondent argues, Petitioner's argument is based entirely on an alleged failure to comply with the state procedural requirements set out in Revised Code 2945.05. But federal habeas relief is only warranted on claims that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see*

9

*Estelle*, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotations omitted)).  Because Petitioner has presented solely a state law claim, federal habeas relief is not warranted.  *Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 705 (S.D. Ohio 2009) ("Any claim that there was a violation or [sic] Ohio Revised Code § 2945.05 is a question of state law and therefore not a proper ground for habeas relief.").

To the extent Petitioner makes vague references to due process to transform his state claim into a federal claim, any federal claim is both unexhausted and meritless.  At no point in the appellate process in the state courts did Petitioner present a due process argument or cite any federal law in support of his arguments.³  *See Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (finding petitioner failed to fairly present his claims to the Ohio courts despite broad allegations that introduction of "prior-bad-acts evidence violated 'his rights to a fair trial, due process, and a reliable determination of his guilt and sentence' as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments" because he "almost exclusively cited Ohio cases that address Ohio evidence law" and "[a]t no point did he connect the trial court's alleged misapplication of state evidence law to rights secured to him by the United States Constitution").  Even were the Court to excuse this failure to exhaust, Petitioner would only be entitled to relief if he were able to prove that his jury waiver "was not knowing, voluntary, or intelligent."  *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007).  However, Petitioner does not at any point challenge these aspects of his waiver, focusing *only* on the alleged improper procedures.  (*See generally* ECF No. 1).

For all these reasons, the undersigned recommends Petitioner be denied relief on ground one.

---

³ Petitioner did cite federal law in support his claims in the pro se post-conviction motion in the trial court.  (ECF No. 6-1 at PageID #: 230).  However, these arguments have not been presented to every level of the state courts such that they are unexhausted.

### B. Ground Two – Manifest Weight of the Evidence

In his second ground for relief, Petitioner argues the guilty verdicts on Counts 1 and 2 were against the manifest weight of the evidence. (ECF No. 1 at PageID #: 7). Petitioner asserts that there was evidence that supported his theory of self-defense, including a witness's testimony that Petitioner told the witness that Petitioner was attacked and was acting in self-defense; the fact that the victim had minor flesh wounds and there was no evidence indicating that they were defensive wounds; and the victim's blood alcohol level of 0.149% indicated she was highly intoxicated. (*Id.* at PageID #: 7). Petitioner argues the guilty verdicts violated his "U.S. Constitution 14 Amendment Ohio Constitution Art 1 Section 1 Ohio Constitution Art 1 Section 4 right to protect one self-property-life-and liberty." (*Id.* at PageID #: 8).

Respondent argues that ground two is both not cognizable and meritless. (ECF No. 6 at 20). Respondent asserts that a manifest weight challenge under Ohio law differs from an insufficient evidence challenge and that by presenting *only* a manifest weight challenge, Mason has failed to state a cognizable federal habeas claim. (*Id.* at 20-21). Even if the claim is cognizable, Respondent argues it fails on the merits because the state appellate court's adjudication of the claim was not objectively unreasonable. (*Id.* at 25). Specifically, Respondent asserts that "any fatal gunshot wound to the back of a victim's head is 100% contrary to a claim of self-defense." (*Id.* at 27).

Petitioner fails to respond to the argument concerning whether ground two is cognizable on federal review. (*See* ECF No. 7 at PageID #: 757-59). Instead, Petitioner argues that "the relevant questions are whether and how the state carried its burden of persuasion – beyond a reasonable doubt – with respect to disproving an element of self-defense" and "[t]he state has not shown this court how it met that burden at trial." (*Id.* at PageID #: 758).

11

The undersigned once again finds Respondent's arguments persuasive. While Petitioner asserts a manifest weight of the evidence claim, such a claim "rests solely on state law," such that it is not cognizable on federal habeas review. *Parker v. Fender*, No. 21-3363, 2021 WL 4771845, at *2 (6th Cir. Sept. 13, 2021) (citing *Nash v. Eberlin*, 258 F. App's 761, 764 n.4 (6th Cir. 2007)); *see Reed v. Jenkins*, No. 16-4687, 2017 WL 6210790, at *1 (6th Cir. June 21, 2017) ("Reasonable jurists could not disagree with the district court's conclusion that Reed's manifest-weight claim presented a state-law issue that was not cognizable on federal habeas review."). However, Petitioner's claim could be construed as a challenge to the sufficiency of the evidence supporting his murder convictions. *See Nash*, 258 F. App'x at 764 n.4 ("Even though a federal court is only allowed to review issues of federal law in a habeas proceeding, *see* 28 U.S.C. § 2254(a), and a manifest-weight-of-the-evidence argument is a state-law argument, we interpret Nash's argument to be a sufficiency of the evidence claim because the law calls for the liberal and active construction of pro se claims for relief 'to encompass any allegation stating federal relief.'").

When presented with a sufficiency of the evidence claim on federal habeas review, a court makes two relevant inquiries. First, the court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, the court does not reweigh the evidence, re-evaluate witness credibility, or substitute its judgment for that of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citations omitted). Even though the court may not have convicted the defendant if it were the trier of fact, it "must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.* Second, assuming the court concludes that no reasonable jury could have found the defendant guilty beyond a reasonable doubt, the court

must still defer to the state appellate court's decision as long as it was not unreasonable. *Id.* (citing 28 U.S.C. § 2254(d)(2)).

In addressing the manifest weight challenge, the state appellate court set forth the relevant law concerning self-defense:

> {¶15} Self-defense is an affirmative defense in Ohio. *State v. Messenger*, 2022-Ohio-4562, ¶ 24. "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that [his] use of force was in self-defense." *Id.* at ¶ 25. Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State "to prove beyond a reasonable doubt that the accused did not use force in self-defense." *State v. Brooks*, 2022-Ohio-2478, ¶ 6. The State's burden "is subject to a manifest-weight review on appeal ...." *Messenger* at ¶ 27.
>
> {¶16} The elements of self-defense are:
>
> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.
>
> (Bracketed text in original.) *Id.* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt." *State v. Fleckenstein*, 2023-Ohio-4347, ¶ 24 (9th Dist.).

(ECF No. 6-1 at PageID #: 218-19). The state court then set forth the facts supporting Petitioner's murder conviction:

> {¶17} Officer Travis Sheely responded to the mother's apartment about twenty minutes after the shooting. He testified that a neighbor reported hearing several gunshots and someone screaming for their mom inside the apartment. Officer Sheely found the child inside the apartment. She was covered in blood and had been shot under her left eye. Officer Sheely testified that the child said, "Chris killed her mama."

13

{¶18} Detective Dan Gump inspected the mother's apartment as part of the crime scene unit. His unit found a total of four bullet casings inside the apartment. They also found several bullet holes facing different directions. He testified that there was bullet damage to the front window of the apartment, the side wall of the apartment, and the kitchen at the back of the apartment. Detective Gump and his team collected a knife they found on a table inside the apartment. They also found a ring doorbell device lying on the floor of the apartment just inside the front door.

{¶19} The State played footage from multiple Ring doorbell cameras and similar devices at trial. One of those devices belonged to the mother. A maintenance supervisor for her property testified that he had installed the camera for her just outside her front door. The police were able to recover footage from that device by issuing Ring a subpoena. The footage captured the sound of a child crying, a gunshot, the child screaming, a second gunshot, more screaming, and a third gunshot that temporarily silenced the child's screaming. It captured the child beginning to cry again as Mr. Mason exited the apartment directly in front of the Ring camera. A gun was visible in his hand as he closed the door on the screaming child. The footage then showed him putting his hand on the Ring device before the footage ended abruptly. Detective Tom Parr testified that it appeared the Ring device had been torn from its position and thrown inside the apartment.

{¶20} Other devices in the area captured Mr. Mason leaving the mother's apartment on foot with a dog and walking to a nearby commercial building. The footage showed him walking around the building and waiting between the wall of the building and a dumpster as police cars sped by with audible sirens activated. When Mr. Mason later emerged, he traveled to the home of an old acquaintance who lived to the southwest. The acquaintance's Ring camera showed Mr. Mason arriving about one hour after the shooting occurred.

{¶21} The acquaintance testified that he had known Mr. Mason for about thirteen years and did not expect to see him that evening. After he let Mr. Mason inside his home, Mr. Mason said something bad had happened. He said a female "came at him with a knife, he was defending himself, and he shot her." He also said he shot the woman's child after "the little girl said something ...." The acquaintance testified that Mr. Mason asked for bleach while he was at his house.

> {¶22} A social worker from the CARE Center at Akron Children's Hospital interviewed the child about two weeks after the shooting. She testified that the child was hesitant to discuss the shooting incident at all and became visibly distressed when asked about it. The child only said: "Mom got dead. She got shot by a gun too. They were fighting."
>
> {¶23} The mother's sister testified that the mother had a "[t]oxic" relationship with Mr. Mason. Although the mother had been doing well, the sister felt that the mother "seemed to be in a place where she was moving backwards" when she began dating Mr. Mason. The sister confirmed that the mother did not have a firearm and that she would have known if the mother had one.
>
> {¶24} Dr. Kristi Waite conducted the mother's autopsy. She testified that the mother died from a single gunshot wound to the back of her head, which would have resulted in an almost immediate death. She also observed several other injuries. The mother had abrasions on her right cheek and collar bone and superficial cuts to her left armpit and breast, her palm, and the back of her ankle. Dr. Waite completed a toxicology screening, and her report showed the mother had a blood alcohol concentration level of .149% at the time of her death. No one questioned Dr. Waite about the significance of that finding at trial.

(*Id.* at PageID #: 219-21). The state appellate court concluded that, "[g]iven the evidence presented at trial, the court reasonably could have concluded that either Mr. Mason was at fault in creating the situation that resulted in the mother's death or that he lacked a bona fide believe that he was in imminent danger of death or great bodily harm and his only means of escape was the use of force." (*Id.* at PageID #: 222).

The state court's detailed summary of the evidence, including the critical facts that the victim suffered "an almost immediate death" due to a gunshot wound to the back of her head and had additional abrasions and superficial cuts to multiple areas of her body, would be sufficient for "*any* rational trier of fact" to have concluded that Mason did not act in self-defense. By arguing that the victim's intoxication and testimony regarding a fight supported his self-defense theory, Mason is asking the Court to draw inferences in his favor. However, the evidence must be viewed

"in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319. Accordingly, Mason has failed to show that his murder convictions were based upon insufficient evidence.

Thus, the undersigned recommends Petitioner be denied relief on ground two.

### VII. Certificate of Appealability

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, Petitioner's grounds for relief are both non-cognizable and meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

### VIII. Recommendation

Petitioner has presented only non-cognizable and meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: December 19, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

16

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).